Mabel S. Talbot
vs.
Town of Little Compton
et als.

Eq. No. 2209.

March 12, 1931.

POULIOT, J. This is a bill in equity brought by the complainant to restrain the respondents from interfering with her right to the use and enjoyment of certain land described in said bill.

There are two questions to be decided. First, is the complainant the owner in fee of said land, and, second, if she is, is the land burdened with an easement to the public to pass over any portion of it.

The complainant claims title through conveyances which run back to 1849, all of which conveyances, excepting two, are quitclaim deeds, these two being warranty deeds. The land as it exists today is a much narrower strip than it was formerly, it having been narrowed down about 25 feet by the action of the sea. It is wild, rocky, uncultivated shore land. It appears that some predecessor in title to the complainant used it to graze his cattle; at one time fenced it in for a period, preventing people from taking sand from the dunes on it and adjacent land, and was asked by one individual for permission, which was granted, to erect a fishing shanty. All of the complainant's predecessors in title had the land taxed to them.

The respondents contend that the complainant has not traced her paper

title back to the proprietors who platted the land; that later the Town of Little Compton, in 1820, passed a vote to assess the losing party in appealing a judicial determination of the title to the land and in asserting the town's claim, and that since she has not so shown her claim, the land is owned by the town which was incorporated as the successor of the proprietors.

The Court is of the opinion that the complainant has a good title. While she can not trace back farther than 1849, neither can the respondents show a set-off of the land to them, it not appearing that the act of incorporation of the town included a taking over by it of the land owned by the proprietors. Furthermore, for a period of nearly 80 years the complainant's predecessors in title treated it as their own by using it and by conveyances which were put on record as notice to the world that they claimed this land as their own. Even if she had title on no other ground, she would have title by adverse possession. It is significant to note that after the vote of 1820, which was not followed by any action, the town made no claim to the land for a period of more than 100 years and then only after difficulties had arisen which have culminated in this litigation.

The Court is further of the opinion that no public way exists over said land excepting over a 50-foot strip on the westerly end of complainant's property as appearing on a plat marked Complainant's Exhibit 1, which way has been confirmed in the Superior Court for said county in equity cause No. 2140. Certain conveyances mention a right of way along a southerly strip called Tunipus Pond, but these rights are reserved by the grantors to themselves, their heirs and assigns, and have never been dedicated to public use. It is true that people have been using this beach or strip for bathing, fishing, and so forth, and that the town has at times taken out gravel to be used on its roads, but there is no evidence that this was done against the wishes of those who then claimed ownership of the land, and the Court will presume that it was all done with permission from the then owners, and was not open, notorious or adverse appropriation of the land as would put the then owners upon notice that the town was claiming the beach as its property.

The Court therefore decided that the fee in said land is in the said complainant, subject to a public way as confirmed by said equity cause No. 2140.

A decree may be entered in accordance with the findings of the Court.

Attorneys for complainant: Curran, Hart, Gainer & Carr.

Attorneys for respondent: Burdick, Corcoran & Peckham.